CONFORMING COPY

1   ROBERT H. ROTSTEIN (SBN 72452)
    rxr@msk.com
2   PATRICIA H. BENSON (SBN 60565)
    phb@msk.com
3   JEAN PIERRE NOGUES (SBN 84445)
    jpn@msk.com
4   MITCHELL SILBERBERG & KNUPP LLP
    11377 West Olympic Boulevard
5   Los Angeles, California 90064-1683
    Telephone: (310) 312-2000
6   Facsimile: (310) 312-3100

7

8   Attorneys for Plaintiffs,
    NBC Studios LLC, Universal Network Television
    LLC, Open 4 Business Productions LLC, and
9   NBCUniversal Media, LLC

10

11                      UNITED STATES DISTRICT COURT

12                     CENTRAL DISTRICT OF CALIFORNIA

13

14  NBC STUDIOS, LLC; UNIVERSAL        CASE NO. CV12- 04536 RSWL (FFMx)
    NETWORK TELEVISION, LLC;
15  OPEN 4 BUSINESS PRODUCTIONS        COMPLAINT FOR:
    LLC; and NBCUNIVERSAL MEDIA,
16  LLC,                               **(1) COPYRIGHT INFRINGEMENT**

17          Plaintiffs,               **(2) INDUCEMENT OF COPYRIGHT**
                                       **INFRINGEMENT**
18          v.
                                       **(3) CONTRIBUTORY COPYRIGHT**
19  DISH NETWORK CORPORATION;          **INFRINGEMENT**
    DISH NETWORK L.L.C.,
20                                     **(4) VICARIOUS COPYRIGHT**
            Defendants.               **INFRINGEMENT**
21

22

23          Plaintiffs NBC Studios LLC, Universal Network Television LLC, Open 4

24  Business Productions LLC and NBCUniversal Media, LLC, by their counsel,

25  allege against Defendants DISH Network Corporation and DISH Network LLC

26  (collectively DISH or Defendants):

27

28                                      1

Mitchell
Silberberg &
Knupp LLP

4653565.6

## **NATURE OF ACTION**

1.  DISH has created and is aggressively marketing as part of its subscription satellite TV packages an unauthorized service that automatically and completely skips the advertising that is an essential element of prime-time broadcasting. Offered with its "Hopper" DVR, Dish's "PrimeTime Anytime" and "Auto Hop" services copy the entire prime-time schedules of all of the major national broadcast networks on a wholesale basis and enable their customers to watch all of that programming on an entirely commercial-free basis. Yet, it is the advertising that generates the revenue to support the enormously expensive investment – in the billions of dollars per year – that creates the programs that viewers want to watch. Indeed without the embedded advertising there would be no program stream at all. The U.S. broadcast networks cannot provide the news, sports and entertainment programming they have historically created and offered if the revenue-generating ads are systematically blotted out on an unauthorized basis by distributors like DISH.

2.  In the face of this reality, DISH now markets its new service with the following basic message: "Hate commercials? Dish creates commercial-free TV so you can save an hour each night! Now you can automatically skip commercials in primetime TV- on ABC, CBS, FOX and NBC in HD." Ex. B. Under the copyright law, however, DISH is simply not free – for its own business and competitive advantage – to take a broadcast network's primetime advertiser-supported programming stream and deliver it with an automatic commercial-skipping service that effectively strips out every single ad across-the-board. If DISH seeks to deliver an on-demand service that provides playback of programs without ads, then it must seek authorization to do so, with mutually-acceptable shared economic arrangements, rather than unilaterally appropriating that economic advantage to itself.

Mitchell
Silberberg &
Knupp LLP

2

4653565.6

3.      Plaintiffs bring this action for preliminary and permanent injunctive relief against Defendants' unlawful scheme to profit from an unprecedented and unauthorized new system for violating Plaintiffs' copyrights in prime-time, network television programming.  Defendants market this infringing system in connection with their satellite broadcast services and digital video recorder ("DVR") called "the Hopper."  As described more fully below, through the infringing functions of the Hopper, *all of* Plaintiffs' prime-time, network television programs (along with all of the prime-time shows aired on the other national broadcast networks) are copied, on a continuous eight-day rolling basis, after which the customer can play it back with *all of* the commercials automatically skipped in their entirety, and create a permanent library of that programming using the Hopper's massive storage capabilities.

4.      Plaintiffs are among the largest and most successful producers and distributors of television programming in the United States and the world. Plaintiffs are engaged in the business of developing, producing, and/or distributing television programming for exhibition and dissemination, and of licensing that programming to others.  In addition to producing (and owning the copyrights in) numerous television programs, Plaintiff NBCUniversal Media, LLC ("NBCU") owns and operates the NBC Television Network ("NBC") and other television program services that deliver that programming to the American public.

5.      The Copyright Act, 17 U.S.C. § 101, *et seq.*, provides Plaintiffs with the exclusive rights to reproduce, adapt, distribute, and publicly perform and display their copyrighted television programming.  Plaintiffs exercise these rights in an ever-expanding variety of ways, including commercially supported broadcast television, syndicated television, Internet-based streaming and download services, video-on-demand services, on-demand access via licensed cable and satellite providers, and on DVDs and Blu-Ray Discs.  Due to the innovation of Plaintiffs

Mitchell
Silberberg &
Knupp LLP

3

4653565.6

1    and others, consumers have access to network television programming through

2    more authorized avenues than ever before.  Yet, through the unlawful functions of

3    the Hopper, Defendants divert revenues generated from Plaintiffs' copyrights and

4    are infringing, and threaten to infringe, Plaintiffs' rights to exploit their

5    copyrighted works in these legitimate markets.  In doing so, Defendants deprive

6    Plaintiffs of a fair return on their investments in creating and distributing some of

7    the most valuable programming on television.  Defendants' conduct is exactly

8    what the copyright laws are intended to prevent.

9         6.    The Hopper allows Defendants and their customers to infringe

10   Plaintiffs' copyrights through the following interrelated features:

11        •   The Hopper provides a "PrimeTime Anytime" feature, which copies

12            all of the prime-time (*i.e.*, Monday through Saturday, 8:00 p.m.- 11:00

13            p.m., and Sunday, 7 p.m. – 11 p.m.) TV programming aired on NBC

14            and on the ABC, CBS and Fox television networks, every evening, on

15            an 8-day rolling basis;

16        •   The Hopper provides what Defendants call the "Auto Hop" feature,

17            which enables the customer to watch the copied Primetime Anytime

18            programming with *all* commercial advertising *automatically* skipped

19            – and as more fully detailed below, Defendants market and actively

20            encourage the use of Auto Hop for that purpose.

21        •   The Hopper provides a memory capacity of two terabytes (*i.e.*, 2,000

22            gigabytes), which, Defendants boast, is capable of storing 2,000 hours

23            of recorded video, thus allowing the creation of large libraries of

24            prime time television.  As Defendants themselves acknowledge, "no

25            other company offers" such capacity.

26        7.    Thus, the Hopper effectively provides Defendants' customers with a

27   premium commercial-free channel consisting, at any given point in time, of *all* of

28                                        4

Mitchell
Silberberg &
Knupp LLP

COMPLAINT FOR COPYRIGHT INFRINGEMENT, INDUCEMENT, CONTRIBUTORY INFRINGEMENT,
AND VICARIOUS INFRINGEMENT UNDER THE COPYRIGHT ACT

the copyrighted programming that aired in prime time on all four national broadcast networks in the past eight days, including without limitation series currently airing on NBC, such as *30 Rock, Dateline NBC, Law & Order SVU, Parks and Recreation, Rock Center, Smash, The Office,* and *Whitney,* along with the ability to create huge commercial-free libraries of those works.

8.   Plaintiffs have invested billions of dollars in their copyrighted content. The Hopper's unprecedented methods of copying will deprive Plaintiffs of the means of payment for their works and erode the value of Plaintiffs' copyrighted programming. "Prime time" is the bloc of the television programming schedule that attracts the most viewers, and advertisers therefore are willing to pay the highest prices to have their commercials shown during this time.   Television networks and local broadcast stations generally derive significant percentages of their advertising revenues from selling the right to advertise before, during or immediately after the prime-time television programming airs.   It is self-evident that Advertisers will not pay, or will pay less, to have their advertisements placed within and around Plaintiffs' television programming if the advertisements will be invisible to viewers.   Further, Plaintiffs recoup part of their substantial investments in creative programming by disseminating their prime-time programming, at a premium, in commercial-free formats, such as through on-demand television access, on-demand Internet access, and the sale of DVDs and Blu-Ray Discs.

9.   The Hopper directly undercuts these established and legitimate markets for paid access to Plaintiffs' programming.   Moreover, the Hopper interferes with Plaintiffs' efforts to make their prime-time programming available to consumers for free through advertising-supported services, such as Internet streaming websites.   Views of such websites will decline if Defendants' subscribers have permanent access to commercial-free copies of all of Plaintiffs' prime-time shows.   As a result, Defendants' unlawful conduct impairs the value of

Mitchell
Silberberg &
Knupp LLP

5

4653565.6

1 Plaintiffs' works and reduces the incentive for their creation and dissemination.

2 Indeed, Defendants' unlawful conduct attacks the fundamental economic

3 underpinnings of television programming creation and delivery, and therefore the

4 very means by which Plaintiffs' copyrighted works are paid for. In this way,

5 Defendants cause harm not only to Plaintiffs, but also to consumers.

## THE PARTIES

8     10.   Plaintiff NBC Studios LLC is a New York limited liability company

9 with its principal place of business at 100 Universal City Plaza, Universal City,

10 California. Plaintiff Universal Network Television LLC is a Delaware limited

11 liability company with its principal place of business at 100 Universal City Plaza,

12 Universal City, California. Plaintiff Open 4 Business Productions LLC is a

13 Delaware limited liability company with its principal place of business at 100

14 Universal City Plaza, Universal City, California. Plaintiffs NBC Studios LLC,

15 Universal Network Television LLC, and Open 4 Business Productions LLC are all

16 indirect, wholly-owned subsidiaries of Plaintiff NBCUniversal Media, LLC, and

17 are all engaged in, among other things, the production and distribution of television

18 programs.

19     11.   Plaintiff NBCUniversal Media, LLC ("NBCU") is a Delaware limited

20 liability company with its principal place of business at 30 Rockefeller Plaza, New

21 York, New York. NBCU, through its NBC News division, through the NBC

22 Network it owns and operates, and through its other subsidiaries, is engaged in,

23 among other things, the production and distribution of television programs.

24     12.   Plaintiffs are informed and believe, and therefore allege, that

25 Defendant DISH Network Corporation is organized under the laws of the State of

26 Nevada and has its principal place of business in Englewood, Colorado. Plaintiffs

27 are informed and believe, and therefore allege, that Defendant DISH Network LLC

28

Mitchell
Silberberg &
Knupp LLP

6

1  is a wholly owned subsidiary of DISH Network Corporation, is organized under

2  the laws of the State of Colorado, and has its principal place of business in

3  Englewood, Colorado.  Plaintiffs are informed and believe, and therefore allege,

4  that each Defendant was the agent, joint venture and/or employee of the other

5  Defendant, and in doing the things hereinafter alleged, each was acting within the

6  course and scope of said agency, employment and joint venture with the advance

7  knowledge, acquiescence, and subsequent ratification of the other Defendant.

8       13.  Plaintiffs are informed and believe, and therefore allege, that DISH

9  Network Corporation and DISH Network LLC operate the third largest pay

10  television transmission system in the United States, servicing approximately 14

11  million customers as of September 30, 2011.

12

13                       **JURISDICTION AND VENUE**

14       14.  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331

15  and 1338, and under the Copyright Act, 17 U.S.C. § 101 *et seq.*

16       15.  This Court has personal jurisdiction over Defendants, and venue is

17  proper in this Judicial District pursuant to 28 U.S.C. § 1391(b).  Defendants

18  conduct extensive commercial activities in this State, including in this Judicial

19  District.  Further, a substantial part of the events or omissions giving rise to this

20  lawsuit, as well as substantial injury to Plaintiffs, have occurred or will occur in

21  this District as a result of Defendants' acts of copyright infringement and

22  impending acts of copyright infringement, and unfair competition, as alleged in

23  detail below.  Venue is also proper in this Judicial District pursuant to 28 U.S.C. §

24  1400(a) in that Defendants may be found in this District in light of their extensive

25  commercial activities in this District.

Mitchell
Silberberg &
Knupp LLP

26

27

28                             7

4653565.6

# FACTUAL BACKGROUND

## Free Over-the-Air, Commercially Supported Broadcasting

16.    NBC is one of the four major over-the-air television networks that transmit programming to the American public via hundreds of free, local, terrestrial broadcast stations that carry the networks' content. The networks' content is also increasingly transmitted to the public by subscription-based cable and satellite companies, including Defendant DISH Network, which retransmit the content carried on local broadcast stations. The networks, including Plaintiff NBCU, both create and license copyrighted content – largely entertainment, news and sports programming – on which the public has come to rely for information and entertainment. The four major networks and their affiliated local stations continue to account for a large percentage of all television viewing in the United States.

17.    Maintaining a nationwide system of free, over-the-air local television stations, which provide news, information, and entertainment programming to virtually all Americans without any need to pay subscription fees, has been a crucial public-policy goal in the United States since the advent of television. The creation and acquisition of the copyrighted content that has come to define free, over-the-air television is made possible through commercial advertisements that are shown in each program. Whether viewers watch programming for free over-the-air or through pay services (such as Defendants' service) that retransmit broadcast signals, advertisements provide the primary means of payment for the copyrighted programming that the public views. As alleged more fully below, Defendants' infringing system blocks the delivery of advertising to viewers and thereby deprives copyright owners of the means by which they are paid for their works. Defendants' conduct diminishes both the value of the works and the incentive to create and distribute original content over the medium. By

Mitchell Silberberg & Knupp LLP

8

4653565.6

1   undermining the engine by which content is produced, Defendants' system
2   threatens to diminish the quantity and the quality of the programming Americans
3   have come to expect and demand.

4

5   ## Plaintiffs' Dissemination of Prime-Time Television Content

6   18.   Plaintiffs' most valuable programming airs during "prime time,"
7   which falls between the hours of eight p.m. and eleven p.m. Monday through
8   Saturday, and seven p.m. to eleven p.m. on Sunday.  Plaintiffs own the United
9   States copyrights in a substantial number of prime-time programs, including
10  successful series currently airing on NBC, such as those listed in Paragraph 7
11  above.  Plaintiffs have registered or filed applications to register with the United
12  States Copyright Office their copyrights in each of the representative works
13  identified in the schedule attached hereto as Exhibit A and incorporated herein by
14  this reference.

15  19.   After a program airs on prime-time television, it is, in most cases,
16  made available for viewing via other markets, including through on-demand access
17  on cable or satellite services; internet-based services such as iTunes, Hulu, and
18  Netflix; mobile phone services; pay-per-view and location-based (*e.g.*, airline and
19  hotel) services; and portable media (*e.g.*, DVDs and Blu-Ray Discs).  Further, the
20  programs are often available very shortly after airing in prime time, with additional
21  offerings following in stages.

22  20.   Plaintiffs have invested (and continue to invest) substantial sums of
23  money and effort each year to create and distribute television programs.  The
24  public benefits from Plaintiffs' creative activities, as intended by the U.S.
25  Constitution and the Copyright Act.  Plaintiffs recoup their substantial investments
26  in creative programming in a number of ways, including the following:

27

28

Mitchell
Silberberg &
Knupp LLP

9

COMPLAINT FOR COPYRIGHT INFRINGEMENT, INDUCEMENT, CONTRIBUTORY INFRINGEMENT,
AND VICARIOUS INFRINGEMENT UNDER THE COPYRIGHT ACT

1
2
3
4
5
6
7
8
9
10
11
12
13
14

- **Advertiser Supported Broadcasts**.  National networks, including NBC, and their local affiliates, derive substantial value by selling advertising time during their broadcast programming.  In addition, broadcasting stations pay licensing fees to content providers like Plaintiffs by generating value from commercial advertisements inserted in or adjacent to each program.  The viewership ratings generated by Nielsen Media Research ("Nielsen") include viewing of commercials during DVR and video-on-demand  ("VOD") usage during the first 3 days from the airing of a program – the so-called "C3" rating – but Nielsen does not credit such viewership for any portion of a commercial that is skipped or fast-forwarded.  Thus, if a commercial is automatically skipped in its entirety, it generates no ratings and produces no revenue to support the creation and dissemination of the programming in which it was aired.

15
16
17
18
19
20
21
22

- **On-Demand Cable/Satellite Access**.  Plaintiffs also license their copyrighted works for viewing by the public through (i) video-on-demand services offered by cable and satellite providers, in which a viewer can choose to watch a particular program at any time of her choosing, generally on an advertising-supported model (in which the advertisements often cannot be skipped or fast forwarded), , and/or (ii) pay-per-view delivery, in which a viewer obtains one-time access to a particular program, in return for payment of a fee for that access.

23
24
25
26
27

- **On-Demand Online Access**.  Plaintiffs earn revenue by providing access to their copyrighted works via their websites, the websites of their affiliates, and the websites and services of licensees.  Some of these models involve showing advertisements to consumers before, after, or during viewing.  Often, these advertisements cannot be

Mitchell
Silberberg &
Knupp LLP

28

10

4653565.6

skipped or fast forwarded.  Other models involve subscription payments, payments for downloaded copies – which are often free of advertisements – or rental payments (for time-limited windows to view content).

- **Content On Multichannel Services.**  Plaintiffs generate revenue by licensing their copyrighted works for "syndicated" exhibition through so-called "basic" non-broadcast television channels such as TBS, TNT and Lifetime.  Syndication involves delivery of programming that already aired on broadcast stations at an earlier date.  The principal means by which non-broadcast channels derive revenues to pay Plaintiffs for licensing of Plaintiffs' content are from the sale of commercial time to advertisers and from fees paid by distributors such as cable systems and satellite carriers (who in turn receive monthly fees paid by subscribers).  Such carriers also pay to retransmit broadcast signals.

- **Fixed Media.**  Plaintiffs generate substantial revenue from the sale or rental for home viewing of authorized copies of their copyrighted works in various formats, including DVD and Blu-Ray Discs.  Plaintiffs offer these formats at various price points, with different offerings providing different levels of access to content, including via in-home players for television viewing or via Internet or computer access through connected licenses resident on the discs.  These formats typically do not include advertisements, other than occasional "trailers" at the beginning of a disc.

Mitchell
Silberberg &
Knupp LLP

11

COMPLAINT FOR COPYRIGHT INFRINGEMENT, INDUCEMENT, CONTRIBUTORY INFRINGEMENT, AND VICARIOUS INFRINGEMENT UNDER THE COPYRIGHT ACT

## **Defendants' Infringing Service**

1
2     21.    On or about March 15, 2012, Defendants made the Hopper DVR
3  available to its customers. The Hopper's "PrimeTime Anytime" option
4  automatically records all prime-time programming on NBC, CBS, ABC, and Fox,
5  every day, to the customers' DVR, which as alleged above, stores up to 2000 hours
6  of content. The prime-time programming, including that of Plaintiffs, is
7  automatically stored on the DVR for eight days and can be stored permanently.

8     22.    On or about May 10, 2012, Defendants began offering a companion
9  service, called "Auto Hop," which automatically skips commercials during
10  viewing.

11     23.    The Hopper is thus specifically designed to function as a commercial-
12  free, on-demand video delivery and librarying service. Defendants boast that the
13  Hopper is unlike any other DVR offered by a television service provider. On their
14  website, an image from which is attached hereto as Exhibit B and incorporated by
15  reference, Defendants refer to the Hopper as an "on-demand" service that permits
16  the creation of commercial-free video "libraries" of copyrighted prime time
17  content commercial free. For example, Defendants market the Hopper as follows:

18     With the Hopper's exclusive feature, PrimeTime Anytime™, three
19     hours of HD primetime programming are available to you On Demand
20     for up to 8 days from initial air date. Plus you can save your favorite
21     primetime content forever. You can also automatically skip
22     commercials in primetime TV – ABC, CBS, FOX and NBC in HD.

23     24.    During an interview while demonstrating the Hopper, a representative
24  of Defendants stated: "I don't think you'd need Hulu or Hulu Plus after this." In
25  other words, Defendants tell their customers that the Hopper can be used as a
26  substitute for Internet-based on-demand services. Plaintiffs make their

27

28                   12

Mitchell
Silberberg &
Knupp LLP

COMPLAINT FOR COPYRIGHT INFRINGEMENT, INDUCEMENT, CONTRIBUTORY INFRINGEMENT,
AND VICARIOUS INFRINGEMENT UNDER THE COPYRIGHT ACT

1   programming available on those services in advertising-supported, rental,

2   purchase, and subscription models.

3          25.    Defendants also tout (Ex. B.) The Hopper's ability to provide

4   commercial-free, on-demand program libraries to their customers:

5          Hate commercials?  DISH created commercial-free TV so you can

6          save an hour each night!  Now you can automatically skip

7          commercials in primetime TV- on ABC, CBS, FOX and NBC in HD.

8          Only on the Hopper. Only from DISH.

9          26.    Vivek Khemka, vice president of DISH Product Management,

10  described the infringing service as follows:

11          With the Auto Hop capability of the Hopper, watching your favorite

12          shows commercial-free is easier than ever before.  It's a revolutionary

13          development that no other company offers and it's something that sets

14          Hopper above the competition. ... With Hopper, you have access to

15          all primetime HD programs broadcast by the four major networks.

16          Now you can watch many of those shows commercial-free, with Auto

17          Hop.

18  DISH Press Release, DISH Introduces Commercial-Free TV With "Auto Hop,"

19  May 10, 2012.

20

21  **Irreparable Harm to Plaintiffs As a Result of Defendants' Infringement**

22          27.    Defendants' brazen copyright infringement seriously threatens

23  Plaintiffs' ability to earn revenue from their copyrighted works through existing

24  and potential methods of dissemination.  Unless enjoined, Defendants' illegal

25  conduct will irreparably injure Plaintiffs in numerous ways that are incapable of

26  calculation or redress through monetary damages.  Defendants' unlawful scheme

27  will also ultimately harm the public, because it will divert revenue from the

28                                                     13

Mitchell
Silberberg &
Knupp LLP

4653565.6

creators and licensors of original programming to Defendants, thereby threatening to decrease the output of copyrighted works and the investment therein. The threatened harm to Plaintiffs includes the following:

- Plaintiffs are paid for advertisements that air during broadcasts based on viewership. If Defendants' customers do not view commercials during prime-time shows, Plaintiffs' most significant source of revenue will be diminished.

- Plaintiffs earn license fees for the television content they produce. If the advertising revenue stream from broadcasting that content is impaired, then the license fees that Plaintiffs receive for produced television content will be diminished.

- Plaintiffs license shows for syndicated runs on cable channels, which take place after the broadcast runs of the shows conclude. If viewers use Defendants' service to collect commercial-free libraries of prime-time network shows for later viewing, the market for watching shows in syndication will be reduced.

- Plaintiffs earn revenue from commercials shown during programs made-available "on demand" for free to subscribers of cable and satellite subscription services, both online and on television. Often these commercials cannot be fast forwarded. Defendants' infringing service will deter viewers from using such offerings.

- Consumers increasingly view programs they missed when they first aired on Internet websites operated by Plaintiffs and Plaintiffs' licensees, such as Hulu. These services are often advertising supported.. Defendants' customers will have little incentive to seek out online access to programming given that Defendants are providing it to them on demand and commercial free.

Mitchell
Silberberg &
Knupp LLP

14

4653565.6

- Plaintiffs make commercial-free, permanent copies of works available to consumers, both through Internet-based downloading services, such iTunes and Amazon, and through the sale of fixed media formats. Defendants' provision of commercial-free, prime-time television libraries to its customers will undercut the markets for Plaintiffs' legitimate offerings.

## CLAIMS FOR RELIEF

## COUNT I

## (COPYRIGHT INFRINGEMENT IN VIOLATION OF THE COPYRIGHT ACT, 17 U.S.C. §§ 101, *ET SEQ.*)

28.   Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1 through 27, inclusive, as though fully set forth herein.

29.   Plaintiffs are the copyright owners of the works listed in Exhibit A, as well as many other motion pictures and television programs telecast in the United States, each of which contain a large number of creative elements wholly original to Plaintiffs and which are copyrightable subject matter under the laws of the United States.

30.   Plaintiffs have obtained (or have applied for) copyright registration certificates for each work listed in Exhibit A.  In doing so, Plaintiffs have complied in all respects with 17 U.S.C. § 101, *et seq.* and all other laws governing federal copyrights.

31.   Each of the works listed in Exhibit A, has, with authorization of Plaintiffs, exploited  in strict conformity with the provisions of 17 U.S.C. §§ 401 and 409, *et seq.*, and all other laws governing federal copyright.

32.   DISH creates Primetime Anytime's "on demand library of approximately 100 hours primetime of TV shows" by recording, without

Mitchell
Silberberg &
Knupp LLP

15

1  authorization, all programming aired by the four national broadcast networks
2  during primetime hours every night.  On information and belief, the programming
3  recorded by DISH through the Primetime Anytime service consists exclusively of
4  copyrighted network programming, including Plaintiffs' copyrighted content.  On
5  further information and belief, Defendants' copying in connection with PrimeTime
6  Anytime occurs on a partitioned section of The Hopper's hard drive that is fully
7  under Defendants' ongoing remote control.  By creating and distributing
8  unauthorized copies of Plaintiffs' works (including the works listed on Exhibit A)
9  through PrimeTime Anytime in the manner described above, Defendants are
10  engaging in and imminently will engage in a vast number of direct copyright
11  infringements, in violation of sections 106(1), 106(3) and 501 of the Copyright
12  Act, 17 U.S.C. §§ 106(1), 106(3) and 501.

13      33.    The foregoing acts of direct infringement by Defendants are
14  unauthorized and unlicensed by Plaintiffs and are not otherwise permissible under
15  the Copyright Act.  Plaintiffs did not consent to Defendants' copying.

16      34.    These acts of infringement have been willful, intentional, and
17  purposeful, in disregard of Plaintiff's rights under the Copyright Act.  Defendants
18  know that their acts are infringing and intentionally or recklessly disregard the law
19  by their conduct.

20      35.    These acts have caused and will continue to cause substantial
21  irreparable harm that cannot fully be compensated or measured in money to
22  Plaintiffs unless further infringement is enjoined and restrained by this Court.
23  Plaintiffs have no adequate remedy at law because damages would be difficult to
24  ascertain and Plaintiffs should not be expected to suffer the blatant infringement.
25  The balance of equities favors Plaintiffs because Defendants could easily cease
26  their operation of the infringing services whereas Plaintiffs' rights will be
27  permanently devalued if the infringing conduct continues.  Finally, the public

Mitchell
Silberberg &
Knupp LLP

28                                                16

COMPLAINT FOR COPYRIGHT INFRINGEMENT, INDUCEMENT, CONTRIBUTORY INFRINGEMENT,
AND VICARIOUS INFRINGEMENT UNDER THE COPYRIGHT ACT

1   interest favors injunctive relief because the goals of the Copyright Act, including

2   increased creation and output of creative works, will be undermined by the

3   persisting infringements committed by DISH Network Corporation and DISH

4   Network LLC.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to preliminary

5   and permanent injunctions prohibiting further infringements of Plaintiffs'

6   copyrights.

7

8                               **COUNT II**

9   **(INDUCEMENT OF COPYRIGHT INFRINGEMENT IN VIOLATION OF**

10             **THE COPYRIGHT ACT, 17 U.S.C. §§ 101, *ET SEQ.*)**

11         36.    Plaintiffs incorporate by reference each and every allegation set forth

12   in paragraphs 1 through 31, as though fully set forth herein.

13         37.    Users of The Hopper's PrimeTime Anytime feature who record all of

14   Plaintiffs' prime-time shows and use the The Hopper's Auto Hop feature to

15   automatically skip commercials otherwise contained in those recordings infringe

16   Plaintiffs' exclusive reproduction rights under section 106 of the Copyright Act, 17

17   U.S.C. § 106(1).

18         38.    Users of The Hopper's PrimeTime Anytime feature who record all of

19   Plaintiffs' prime-time shows and who store said recordings permanently or for long

20   periods of time for commercial-free  multiple viewings at times of their choosing

21   infringe Plaintiffs' exclusive reproduction rights under section 106 of the

22   Copyright Act, 17 U.S.C. § 106(1).

23         39.    Plaintiffs have not authorized such persons to engage in such acts or

24   consented to such acts.

25         40.    Defendants have induced the infringing acts of their customers

26   described above, in violation of sections 106 and 501 of the Copyright Act, 17

27   U.S.C. §§ 106 and 501.  Defendants provide The Hopper and its PrimeTime

Mitchell
Silberberg &
Knupp LLP

28                                    17

COMPLAINT FOR COPYRIGHT INFRINGEMENT, INDUCEMENT, CONTRIBUTORY INFRINGEMENT,
AND VICARIOUS INFRINGEMENT UNDER THE COPYRIGHT ACT

1 | Anytime and Auto Hop features with the object of promoting their use for
2 | infringement.

3 |     41.   Defendants' conduct demonstrates Defendants' purposeful promotion
4 | of infringement. Among other things:

5 |        • Defendants have marketed The Hopper expressly for copying and
6 |          creating libraries of Plaintiffs' works and then viewing them
7 |          commercial free.

8 |        • Defendants' marketing efforts have included targeting known markets
9 |          for infringement, including consumers who wish to obtain access to
10 |          commercial-free programming without payment and consumers who
11 |          wish to avoid paying market prices for permanent copies of
12 |          commercial-free programs.

13 |        • Defendants have expressly marketed their services as substitutes for
14 |          licensed methods of accessing Plaintiffs' works, including Hulu.com
15 |          and other video-on-demand services.

16 |        • Defendants have refused to use readily available technological means
17 |          to limit or prevent infringement by their customers. In fact,
18 |          Defendants expressly designed their services to facilitate infringement
19 |          and make it as easy as practicable to accomplish infringing acts.

20 |     42.   Defendants' inducement of their customers' infringement is, and at all
21 | times has been, willful, intentional, and purposeful, in disregard of Plaintiff's rights
22 | under the Copyright Act. Defendants know that their acts are inducing infringing
23 | conduct. Defendants intentionally or recklessly disregard the law by their conduct.
24 | Plaintiffs have not authorized or consented to Defendants' conduct.

25 |     43.   Defendants' acts have caused and will continue to cause substantial
26 | irreparable harm that cannot fully be compensated or measured in money to
27 | Plaintiffs unless further infringement by Defendants is enjoined and restrained by

28 | 18

Mitchell
Silberberg &
Knupp LLP

4653565.6

1   this Court. Plaintiffs have no adequate remedy at law because damages would be

2   difficult to ascertain and Plaintiffs should not be expected to suffer Defendants'

3   blatant infringement. The balance of equities favor Plaintiffs because Defendants

4   could easily cease their operation of the infringing services whereas Plaintiffs'

5   rights will be permanently devalued if the infringing conduct continues. Finally,

6   the public interest favors injunctive relief because the goals of the Copyright Act,

7   including increased creation and output of creative works, will be undermined by

8   the persisting infringements committed by Defendants' customers. Pursuant to 17

9   U.S.C. § 502, Plaintiffs are entitled to preliminary and permanent injunctions

10  prohibiting further infringements of Plaintiffs' copyrights.

11

12                              **COUNT III**

13  **(CONTRIBUTORY COPYRIGHT INFRINGEMENT IN VIOLATION OF**

14          **THE COPYRIGHT ACT, 17 U.S.C. §§ 101, *ET SEQ*.)**

15          44.     Plaintiffs incorporate by reference each and every allegation set forth

16  in paragraphs 1 through 31, inclusive, and 37 through 39, as though fully set forth

17  herein.

18          45.     By participating in, facilitating, assisting, enabling, materially

19  contributing to, and encouraging the infringing reproductions of Plaintiffs' works

20  described above in paragraphs 37 through 39, with full knowledge of their illegal

21  consequences, and with the ability to take simple measures to prevent or limit

22  infringement, Defendants are contributing to infringements of Plaintiffs'

23  copyrighted works, in violation of sections 106 and 501 of the Copyright Act, 17

24  U.S.C. §§ 106 and 501. Defendants make the infringement described above in

25  paragraph s 37-39 possible and provide the site and facilities for the infringements.

26          46.     Defendants know or have reason to know of the actual or imminent

27  infringement of Plaintiff's copyrights. Indeed, on information and belief,

28                                    19

Mitchell
Silberberg &
Knupp LLP

4653565.6

1  Defendants monitor their customers' infringing activity and technologically and
2  personally assist their customers throughout their illegal acts.  DISH Networks'
3  service agreement with its customers states that it collects information regarding
4  "the programming service options [customers] have chosen."  The agreement also
5  states: "When you use our interactive or other transactional television services, the
6  satellite system automatically collects certain information on your use of these
7  services."

8      47.    Defendants' contributions to their customers' infringement have been
9  willful, intentional, and purposeful, in disregard of Plaintiff's rights under the
10  Copyright Act.  Defendants know that their acts are contributing to infringing
11  conduct and Defendants intentionally or recklessly disregard the law by their
12  conduct.  Plaintiffs have not authorized or consented to Defendants' conduct.

13      48.    Defendants' acts have caused and will continue to cause substantial
14  irreparable harm that cannot fully be compensated or measured in money to
15  Plaintiffs unless further infringement by Defendants is enjoined and restrained by
16  this Court.  Plaintiffs have no adequate remedy at law because damages would be
17  difficult to ascertain and Plaintiffs should not be expected to suffer Defendants'
18  blatant infringement.  The balance of equities favors Plaintiffs because Defendants
19  could easily cease their operation of the infringing services whereas Plaintiffs'
20  rights will be permanently devalued if the infringing conduct continues.  Finally,
21  the public interest favors injunctive relief because the goals of the Copyright Act,
22  including increased creation and output of creative works, will be undermined by
23  the persisting infringements committed by Defendants' customers.  Pursuant to 17
24  U.S.C. § 502, Plaintiffs are entitled to preliminary and permanent injunctions
25  prohibiting further infringements of Plaintiffs' copyrights.

Mitchell
Silberberg &
Knupp LLP

26
27
28

20

4653565.6

## COUNT IV

## (VICARIOUS COPYRIGHT INFRINGEMENT IN VIOLATION OF THE COPYRIGHT ACT, 17 U.S.C. §§ 101, *ET SEQ.*)

49.   Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1 through 31, inclusive, and 37 through 39, as though fully set forth herein.

50.   Defendants have the right and ability to supervise and control the infringing conduct of their customers described above in paragraphs 37 through 39. DISH Networks' contract with their customers states:

> We may add, delete, rearrange and/or change any and all
> programming, programming packages and other Services that we
> offer, as well as the prices and fees related to such programming,
> programming packages and Services, at any time, including without
> limitation, during any term commitment period to which you have
> agreed.

51.   Defendants' regular involvement in their customers' copying is an indispensable link in such infringing conduct. Defendants control their customers' ability to record prime-time content using the Primetime Anytime feature. In addition, Defendants go to great lengths and efforts to enable their customers to skip entire commercial segments. On information and belief, in order to achieve this goal, Defendants must study the shows that are transmitted and "push" certain data to the Hopper devices resident in the homes of customers. Absent Defendants' conduct, customers simply could not automatically skip commercials.

52.   On information and belief, all of the infringing activity is actively monitored by Defendants. DISH Networks' service agreement with its customers states that it collects information regarding "the programming service options [customers] have chosen." The agreement also states: "When you use our

Mitchell
Silberberg &
Knupp LLP

21

4653565.6

1  interactive or other transactional television services, the satellite system
2  automatically collects certain information on your use of these services."

3      53.   Defendants also receive a direct financial benefit from the
4  infringement described above in paragraph 37 through 39 above.  Plaintiffs are
5  informed and believe, and therefore allege, that Defendants have attracted,
6  obtained and retained customers as a result of its infringing offerings.  The
7  PrimeTime Anytime and Auto Hop features constitute draws to Defendants'
8  services.  Defendants actively advertise the infringing capabilities of The Hopper.
9  Defendants also receive subscription payments from customers who possess The
10  Hopper.

11      54.   Defendants' refusal to stop or limit its customers' infringements has
12  been willful, intentional, and purposeful, in disregard of Plaintiff's rights under the
13  Copyright Act.  Plaintiffs have not authorized or consented to Defendants'
14  conduct.

15      55.   Defendants' acts have caused and will continue to cause substantial
16  irreparable harm that cannot fully be compensated or measured in money to
17  Plaintiffs unless further infringement by Defendants is enjoined and restrained by
18  this Court.  Plaintiffs have no adequate remedy at law because damages would be
19  difficult to ascertain and Plaintiffs should not be expected to suffer Defendants'
20  blatant infringement.  The balance of equities favor Plaintiffs because Defendants
21  could easily cease their operation of the infringing services whereas Plaintiffs'
22  rights will be permanently devalued if the infringement continues.  Finally, the
23  public interest favors injunctive relief because the goals of the Copyright Act,
24  including increased creation and output of creative works, will be undermined by
25  the persisting infringements committed by Defendants' customers.  Pursuant to 17
26  U.S.C. § 502, Plaintiffs are entitled to preliminary and permanent injunctions
27  prohibiting further infringements of Plaintiffs' copyrights.

28

Mitchell
Silberberg &
Knupp LLP

22

4653565.6

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter judgment in their favor and against Defendants, and each of them, as follows:

(a)   On Counts I through IV, preliminarily and permanently enjoin, pursuant to 17 U.S.C. § 502, Defendants, their respective officers, agents, servants, employees, and those persons in active concert or participation with Defendants, or any of them, from inducing infringement or directly, contributorily, and/or vicariously infringing by any means, including but not limited to specifically in connection with The Hopper's PrimeTime Anytime and Auto Hop features, Plaintiffs' exclusive rights under the Copyright Act, including, but not limited to any of Plaintiffs' rights in any of the works listed on Exhibit A, and from licensing any other person to do the same;

(b)   award Plaintiffs statutory damages in accordance with 17 U.S.C. § 504 and other applicable law;

(c)   award Plaintiffs costs and reasonable attorneys' fees in accordance with 17 U.S.C. § 505, and other applicable law; and

(d)   award Plaintiffs such further and additional relief as the Court may deem just and proper.


DATED: May 24, 2012

ROBERT H. ROTSTEIN
PATRICIA H. BENSON
JEAN PIERRE NOGUES
MITCHELL SILBERBERG & KNUPP LLP


ROBERT H. ROTSTEIN
Attorneys for Plaintiffs,
NBC Studios LLC, Universal Network
Television LLC Open 4 Business Productions
LLC, and NBCUniversal Media, LLC,

Mitchell
Silberberg &
Knupp LLP

23

4653565.6

EXHIBIT A

## EXHIBIT A – SCHEDULE OF WORKS

1.  The Return of Avery Jessup, 30 Rock (application for copyright registration filed May 18, 2012) - NBC Studios LLC.

2.  What Will Happen to the Gang Next Year?, 30 Rock (application for copyright registration filed May 18, 2012) - NBC Studios LLC.

3.  BeeWare, Grimm (copyright registration no. PA 1-765-480, Nov. 23, 2011) - Open 4 Business Productions LLC.

4.  Three Coins in a Fuchsbau, Grimm (copyright registration no. PA 1-778-887, Mar. 8, 2012) - Open 4 Business Productions LLC.

5.  Plumed Serpent, Grimm (copyright registration no. PA 1-780-055, Mar. 16, 2011) - Open 4 Business Productions LLC.

6.  Island of Dreams, Grimm (application for copyright registration filed April 4, 2012) - Open 4 Business Productions LLC.

7.  Theatre Tricks, Law & Order SVU (copyright registration no. PA 1-774-128, Jan. 26, 2012) - Universal Network Television LLC.

8.  Trivia, The Office (copyright registration no. PA 1-774-146, Jan. 26, 2012) - Universal Network Television LLC.

9.  Jury Duty, The Office (copyright registration no. PA 1-776-312, Feb. 13, 2012) - Universal Network Television LLC.

10. Special Project, The Office (copyright registration no. PA 1-775-976, Feb. 16, 2012) - Universal Network Television LLC.

11. Tallahassee, The Office (copyright registration no. PA 1-77-493, Feb. 29, 2012) - Universal Network Television LLC.

12. Pawnee Rangers, Parks and Recreation (copyright registration no. PA 1-756-487, Oct. 20, 2011) - Open 4 Business Productions LLC.

13. The Comeback Kid, Parks and Recreation (copyright registration no. PA 1-774-147, Jan. 26, 2012) - Open 4 Business Productions LLC.

14. Win, Lose, or Draw, Parks and Recreation (application for copyright registration filed May 18, 2012) - Open 4 Business Productions LLC.

15. Bombshell, Smash (application for copyright registration filed May 18, 2012) - NBC Studios LLC.

Exhibit A
Page 24

16.   Private Parts, Whitney (copyright registration no. PA 1-773-957, Jan. 13, 2012) - NBC Studios LLC.

17.   48 Hours, Whitney (copyright registration no. PA 1-777-488, Feb. 29, 2012) - NBC Studios LLC.

18.   Mad Women, Whitney (copyright registration no. PA 1-777-464, Feb. 29, 2012) - NBC Studios LLC.

19.   Dateline NBC 5/18/12 (application for copyright registration filed May 24, 2012) – NBCUniversal Media LLC

Exhibit _1_
Page _25_

EXHIBIT  B

4650336.1/44025-00003



DISH Hopper - Hopper DVR - Hopper Whole Home DVR - DISH - Windows Internet Explorer provided by MSK

http://www.dish.com/technology/hopper/

DISH Hopper - Hopper DVR -...

File Edit View Favorites Tools

HOPPER | OVERVIEW | WHOLE-HOME HD DVR | PRIMETIME ANYTIME | FEATURES | APPS | MOVIES | REVIEWS

Get DISH 1-800-823-4929

#AdFreeTV

*Commercial-free TV feature only available for playback of certain HD primetime shows on ABC, CBS, FOX and NBC with PrimeTime Anytime feature. Functions must be enabled by customer and are subject to availability.*

# WHOLE-HOME HD DVR SERVICE.

Full HD DVR functionality on every TV, so you can pause, rewind and record live TV in any room. Plus, you can access your DVR library on all TVs so you can record a movie in the living room, start watching it in the bedroom and then finish in the kitchen. Watch our video to learn more

*Requires a Joey to be linked to Hopper.*

Exhibit B
Page 27

4650336.1/44025-00003



4650336.1/44025-00003



HOPPER | OVERVIEW | WHOLE-HOME HD DVR | PRIME TIME ANYTIME | FEATURES | APPS | MOVIES | REVIEWS

## WATCH COMMERICAL-FREE TV

Hate commercials? DISH created commercial-free TV so you can save an hour each night† Now you can automatically skip commercials in primetime TV- on ABC, CBS, FOX and NBC in HD. Only on the Hopper. Only from DISH.

*Feature must be enabled by customer and is subject to availability. Only available with playback of select shows.*

## Record up to 6 HD Channels at Once with PrimeTime Anytime™.

Record up to six live HD channels at once during primetime, including your 4 local HD networks and 2 channels of your choosing, and stream four recorded HD programs to different TVs simultaneously. That means you can watch more and miss less of your favorite programs.

## Massive 2 TB Hard Drive.

Exhibit B
Page 28

DISH Hopper - Hopper DVR - Hopper Whole Home DVR - DISH - Windows Internet Explorer provided by MSK

http://www.dish.com/technology/hopper/

DISH Hopper - Hopper DVR -...

File Edit View Favorites Tools

HOPPER | OVERVIEW | WHOLE-HOME HD DVR | PRIMETIME ANYTIME | FEATURES | APPS | MOVIES | REVIEWS

**Massive 2 TB Hard Drive.**

Record and store up to 2,000 hours – the most available from any TV provider! Plus, hundreds of On Demand titles are available for instant viewing.

## PRIMETIME ANYTIME™.

With the Hopper's exclusive feature, PrimeTime Anytime™, three hours of HD primetime programming are available to you On Demand for up to 8 days from initial air date. Plus you can save your favorite primetime content forever. You can also automatically skip commercials in primetime TV – ABC, CBS, FOX and NBC in HD.

Watch our video to learn more

4650336.1/44025-00003

Exhibit B
Page 29





4650336.1/44025-00003



4650336.1/44025-00003



4650336.1/44025-00003



# HOPPER VIDEO GALLERY.

The Hopper - Overview

## Intuitive Search.

Search by title, actor, channel and more to find your favorite shows, recorded programs and On Demand content. Plus with predictive search, the Hopper will start showing results immediately as you type, so you'll find your favorite shows faster than ever.

## TV Everywhere™ Technology.

Connect your Hopper to the Sling® Adapter and experience TV Everywhere™ brand technology from DISH. Watch live TV programming and DVR recordings anywhere you travel. **Watch Video**

*Sling Adapter sold separately.*

## SIRIUSXM SATELLITE RADIO

Music lovers will love this. Only DISH offers over 70 channels of SiriusXM satellite radio, the same music channels available in your car, with America's Top 120, DishLATINO Clasico, and higher packages. DISH is the only pay TV provider to give you SiriusXM satellite music.

Exhibit B
Page 32

4650336.1/44025-00003





# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Ronald S. W. Lew and the assigned discovery Magistrate Judge is Frederick F. Mumm.

The case number on all documents filed with the Court should read as follows:

## CV12- 4536 RSWL (FFMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

ROBERT H. ROTSTEIN (SBN 72452) rxr@msk.com
PATRICIA H. BENSON (SBN 6    55) phb@msk.com
JEAN PIERRE NOGUES (SBN 84445) jpn@msk.com
MITCHELL, SILBERBERG & KNUPP LLP
11377 West Olympic Blvd.
Los Angeles, CA 90064-1683
(310) 312-2000

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NBC STUDIOS, LLC; UNIVERSAL NETWORK TELEVISION, LLC; OPEN 4 BUSINESS PRODUCTIONS LLC and NBCUNIVERSAL MEDIA, LLC<br><br>PLAINTIFF(S)<br><br>v.<br><br>DISH NETWORK CORPORATION; DISH NETWORK L.L.C<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV12-04536 DSWL (FFMx)<br><br><br>**SUMMONS** |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within    21   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Robert H. Rotstein</u>, whose address is <u>MITCHELL SILBERBERG & KNUPP LLP, 11377 West Olympic Boulevard, Los Angeles, California 90064</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Dated: ____  MAY 2 4 2012  ____

Clerk, U.S. District Court

By: _____
          Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*


American LegalNet, Inc.
www.FormsWorkFlow.com

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
NBC STUDIOS, LLC; UNIVERSAL NETWORK TELEVISION, LLC; OPEN 4 BUSINESS PRODUCTIONS LLC and NBCUNIVERSAL MEDIA, LLC

**DEFENDANTS**
DISH NETWORK CORPORATION; DISH NETWORK L.L.C.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
ROBERT H. ROTSTEIN (SBN 72452) rxr@msk.com
MITCHELL, SILBERBERG & KNUPP LLP
11377 West Olympic Blvd.
Los Angeles, CA 90064-1683
(310) 312-2000

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify):
- ☐ 6 Multi-District Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No  ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
17 U.S.C. § 101, et seq. Copyright Infringement; Inducement of Copyright Infringement; Contributory Copyright Infringement; Vicarious Copyright Infringement

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☒ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 61 HIA(1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities – Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | | ☐ 446 American with Disabilities – Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | **IMMIGRATION** | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: CV12-04536

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08) | CIVIL COVER SHEET | Page 1 of 2

American LegalNet, Inc.
www.FormsWorkflow.com

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date May 24, 2012
ROBERT H. ROTSTEIN

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com